# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

v.               Civil Case No. SAG-18-2956

DOLGENCORP, LLC,

    Defendant.

## MEMORANDUM OPINION

The Equal Employment Opportunity Commission ("EEOC") brought this action against Defendant Dolgencorp, LLC t/a Dollar General Stores, Inc. ("Dolgencorp"), alleging that Dolgencorp unlawfully discriminated against its former employee "by sexually harassing and constructively discharging her." ECF 1 at 1. Discovery is now complete, and Dolgencorp has filed a motion for summary judgment, supported by a memorandum of law. ECF 36, 36-1. I have reviewed that motion, and the associated opposition and reply. ECF 37, 38. No hearing is necessary, *see* Loc. R. 105.6 (D. Md. 2018). For the reasons stated below, Dolgencorp's motion will be granted as to the limited issue of constructive discharge, but denied as to the EEOC's remaining hostile work environment claim.

## I. FACTUAL BACKGROUND

The facts described herein are viewed in the light most favorable to the EEOC, as the non-moving party. In the summer of 2016, on June 2, 2016 Amber Jacobs[1] ("Jacobs") accepted a position as Assistant Store Manager for the Dollar General Store in Rock Hall, Maryland. ECF

---

[1] At the time of the incidents described herein, Jacobs was known by her maiden name, Amber Olsen. ECF 37 at 1.

36-3 at 104:8-16, 105:4-6. Staffing at the Rock Hall store typically included only the manager and one cashier, except on days when extra employees were present because inventory shipments needed unloading and stocking. *Id.* at 106:6-107:8; ECF 37-3 at 32:1-13. Rock Hall's store manager, Darrel Moses, had authority to hire, fire, and discipline store employees. ECF 37-3 at 32:1-13; ECF 36-5 at 63:14-16; ECF 37-4 at 54:2-16 (responding "Yes" to questions about authority). Moses, like all employees, participated in online training concerning sexual harassment. ECF 36-5 at 49: 9-21. Dolgencorp's employee handbook, which is available online, contains an anti-harassment policy. ECF 36-3 at 183:14-184:3. The anti-harassment policy is provided to all employees at their time of hiring. *Id.* at 134-135; ECF 36-4 at 113:2-13.

Shortly after Jacobs began working at Dollar General, Moses began subjecting her to unwanted conduct, including:

- When Moses, another assistant manager, and Jacobs were stocking canned sausages, Moses made a comment about his "black sausage" and "humped" the sausage display. ECF 36-3 at 185:16-193-3.

- On another occasion when Moses and Jacobs were stocking shelves, Jacobs remarked that the job should come with a warning about all the time spent kneeling. In response, Moses turned her head towards his crotch and told her that she could be on her knees anytime for him. *Id.* at 193:16-200:20.

- Moses attempted to massage Jacobs's shoulders, until she instructed him to stop. *Id.* at 203:20-206:12.

- Moses told Jacobs that he liked how she looked in her pants, and commented on her breasts. *Id.* at 208:10; 207:11-12.

- When Moses and Jacobs were seated close together at the computer for instructional purposes, she accidentally brushed against his leg and pulled away. Moses grabbed her leg and stated that she could touch him anytime. *Id.* at 213:11-217:17.

- On one occasion when Jacobs was buttoning her shirt, Moses suggested that she leave it unbuttoned. ECF 37-2 at 4.

2

- When Jacobs felt ill and sought to leave the store for her lunch break, Moses told her that he would fire her if she left. Jacobs's fiancé brought her medicine and food, and stayed with her while she ate in her truck outside the store. Moses paced back and forth, staring at her. ECF 36-3 at 219:10-224:13.

After the lunch break incident, Jacobs decided that she could not continue to work with Moses. ECF 37-1 at 155:4-9. On or about June 29, 2016, Jacobs complained to the female store manager of the Dollar General in Chestertown, Maryland, Michelle Miller. ECF 36-3 at 144:19-145:14. Miller told Jacobs that she had heard of similar incidents involving Moses, and advised Jacobs to contact Dolgencorp's human resources ("HR") department to report the conduct. *Id.* at 148:5-149:15; ECF 37-1 at 151:9-12. Miller also suggested that Jacobs transfer to her Chestertown store, as a way to keep her employment, while obtaining separation from Moses. ECF 36:3 at 148:5-149:15. The District Manager, Nate Rheiner, and Jacobs agreed with Miller that Jacobs should be transferred to Chestertown while the investigation proceeded. ECF 36-6 at 48:10-49:15 ("I do recall giving her an option to certainly move to a store that was close by to immediately get her out of that situation."); ECF 37-1 at 175:1-5. At Miller's urging, Jacobs also contacted HR and made a complaint. ECF 36-3 at 154:7-14.

Jacobs began working at the Chestertown store on July 4, 2016, although she subsequently took several days off for mental health treatment as a result of Moses's harassment. ECF 36-3 at 125:6-12, 163:10-165:3. The Chestertown store did not provide Jacobs with the same number of hours she had worked at Rock Hall. *Id.* at 165:8-12 (stating "my hours decreased in Chestertown."); 167:6-18. Jacobs contacted HR once per week to ask about the status of the investigation, which remained ongoing. *Id.* at 240:7-13.

During the investigation, Rheiner obtained a total of five statements from Jacobs, Moses, and three of Jacobs's co-workers at Rock Hall. ECF 37-6 at 80:3-90:5, 92:3-21, 98:20-100:24, 125:23-126:21; 145-6-146:8. He also viewed video recordings from the Rock Hall store. ECF 36-

3

4 at 70:19-72:21. An Employee Relations HR Manager HR in Boston, Lindsay Bernstein, worked with Rheiner on the investigation. *See, e.g. id.* at 59:2-62:18.

Prior to August 1, 2016, Moses had been made aware of Jacobs's allegations. ECF 36-6 at 129: 19-22 (stating Darrel's statement was supplied to HR on August 1, 2016). Rheiner had sent a region-wide request for store manager volunteers to work at the Chestertown store to prepare the store for a visit from a corporate executive. ECF 36-6 at 130:7-10 ("I had a lot of managers going to the building, in and out, trying to get the store to look ready for this visit."). On the morning of August 1, 2016, Jacobs was working at the cash register at the front of the Chestertown store when Moses arrived, to respond to the call for volunteers. ECF 36-3 at 232:17-233:2; ECF 36-5 at 96:7-9 ("I was asked if I would go to the Chestertown store to help and I said yes."). Moses walked in, smiled "menacingly" at Jacobs, and walked through the store to the back where the volunteers were gathering, without speaking to her. ECF 36-3 at 235:16-236:8; ECF 36-5 at 99:6-100:14. After seeing Moses walk past, Jacobs collected her belongings, left the store, and resigned her position. ECF 36-3 at 236:18-237:2. Rheiner called Jacobs to apologize for Moses's presence at the store during her shift and to request her return, but Jacobs did not respond. *Id.* at 228:9-229:10. Miller also left a voice mail for Jacobs. *Id.* at 228:3-5.

The investigation into Jacobs's original harassment allegations outlasted her employment, and took about two months to complete. ECF 36-6 at 149: 21-24. In the end, Rheiner issued a "SMART coach," which reflected that the allegations could not be substantiated, but that future misconduct could result in Moses's termination. ECF 36-5 at 106:15-107:8. Dolgencorp did not contact Jacobs, who was no longer an employee, to inform her of the results of the investigation.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party, bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad,* 823 F. Supp. 2d 334, 348 (D. Md. 2011). If the moving party establishes that there is no evidence to support the non-movant's case, the burden then shifts to the non-movant to proffer specific facts to show a genuine issue exists for trial. *Id*. The non-movant must provide enough admissible evidence to "carry the burden of proof at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient; rather, there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349. Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. The non-movant "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). If the non-movant fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Casey*, 823 F. Supp. 2d at 348-49. In ruling on a motion for summary judgment, a court must view the facts and inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

**III. ANALYSIS**

The EEOC contends that Jacobs was subjected to a sexually hostile work environment. The elements of that claim include: (1) that Jacobs was subjected to unwelcome conduct, (2) that the conduct was based upon her sex, (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive work environment, and (4) that the conduct is imputable to the employer. *See Okoli v. City of Baltimore,* 648 F.3d 216, 220 (4th Cir. 2001). The first two elements are not expressly contested by Dolgencorp in the context of this motion, so this Court's analysis will focus on the latter two factors.

### A. Severe or Pervasive Conduct

This Court is persuaded that a genuine issue of material fact exists as to whether the conduct Jacobs experienced was sufficiently severe and pervasive to alter the conditions of her employment. This case presents a quintessential "he said, she said" situation in terms of whether the alleged harassing conduct took place. Viewing all facts in the light most favorable to the EEOC as the non-moving party, and assuming therefore that each incident occurred as Jacobs describes, she was subjected to a significant number of harassing incidents in her small number of work shifts alongside Moses. While Dolgencorp argues that the limited number of shifts the two worked together renders the conduct insufficiently pervasive, ECF 36-1 at 12, the inverse inference can reasonably be drawn: the fact that so many discrete incidents of harassment took place over a very short employment window reflects the intensely pervasive nature of the harassing conduct.

Similarly, though Dolgencorp contends that the totality of harassing incidents in this case does not amount to sufficiently severe conduct, given the concentrated nature of the behavior over a short period of time, there is also a genuine issue of material fact regarding severity. This case is distinguishable from the cases cited by Dolgencorp, many of which involve a handful of similar

harassing incidents taking place over employment spanning months or years. *See,* ECF 36-1 at 13-14 (collecting cases). As described above, Jacobs's allegations include physical touching, including turning Jacobs's head to Moses's groin, making crude comments about having a "black sausage" while "humping" a store shelf, and encouraging Jacobs to leave her blouse unbuttoned, among other comments. Moreover, Moses's status as a manager at the store, with authority to hire, fire, and discipline employees, enhances the severity. *See, e.g.*, *Boyer-Liberto v. Fontainebleau Corp.*, 789 F.3d 264, 278 (4th Cir. 2015). Given that all of that conduct occurred within, at the outer limits, just under one month, a reasonable factfinder could conclude that the conduct was sufficiently severe and pervasive to alter the conditions of Jacobs's employment. Because, however, Dolgencorp also asserts a defense under the *Faragher/Ellerth* doctrine, this Court will proceed to consider the remaining element of the EEOC hostile work environment claim.

### B. Conduct Imputable to Employer

In two cases from 1998, the Supreme Court articulated the standard for a plaintiff to demonstrate her employer's responsibility for harassing conduct by her supervisor. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998). Under those cases, an employer is strictly liable where harassment by a supervisor culminated in a tangible employment action against the plaintiff. *See id.* Otherwise, in what is described as the *Faragher/Ellerth* doctrine, an employer can avert liability if it can establish (1) the exercise of reasonable care to prevent and correct promptly any sexual harassment; and (2) the plaintiff's unreasonable failure to avail herself of preventative or corrective opportunities offered by the employer. *See Faragher,* 524 U.S. at 807; *Ellerth,* 524 U.S. at 765.

The EEOC contends that because "the tangible employment action in dispute is Defendant's constructive discharge of Jacobs," ECF 37 at 18 n.11, Dolgencorp is precluded from availing itself of the *Faragher/Ellerth* defense. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 140–41 (2004) ("We conclude that an employer does not have recourse to the *Ellerth/Faragher* affirmative defense when a supervisor's official act precipitates the constructive discharge; absent such a 'tangible employment action'"). To prove its claim of constructive discharge, the EEOC must prove that Jacobs's "working conditions [became] so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Green v. Brennan,* 136 S. Ct. 1769, 1776-77 (2016). In fact, an employee must show "something more" than the showing required for a hostile work environment claim. *Evans v. Int'l Paper Co.,* 936 F.3d 183, 193 (4th Cir. 2019 "'Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress.'") *Id.* (internal citations omitted). The Fourth Circuit described the standard of "intolerability" as follows:

> Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign. Instead, intolerability is assessed by the subjective standard of whether a reasonable person in the employee's position would have felt *compelled* to resign, that is, whether he would have had *no choice* but to resign.

*Id.* at 193. The Fourth Circuit went on to note, "The more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." *Id.*

In the instant case, the EEOC alleges that the official acts triggering the constructive discharge were "district manager Rheiner assigning store manager Moses (and Moses volunteering himself) to the Chestertown store." ECF 37 at 18. That description mischaracterizes the evidence in the record. The uncontroverted evidence reflects that a call for assistance went out generally to

8

area store managers, requesting temporary assistance at the Chestertown store to prepare for an executive visit. *See* ECF 36-3 at 130:7-10; ECF 36-5 at 96:7-9. There is no evidence that Rheiner specifically "assigned" Moses to the store, nor that Moses was aware that Jacobs would be working the morning shift at Chestertown at the time of his arrival. Moses testified that he realized, upon his arrival at the Chestertown parking lot, that Jacobs could possibly be present, and that his volunteering might not be a "good idea." ECF 36-5 at 225:13-226:8. However, viewing the facts in the light most favorable to the EEOC, Moses entered the store, smiled "maliciously" at Jacobs without speaking to her, and proceeded towards the back of the store to meet with the visit preparation group. ECF 36-3 at 232:17-236:8. That isolated conduct, lasting a few seconds at most, did not render Jacobs's working conditions objectively intolerable, in light of the fact that she had not otherwise been exposed to Moses, or to any other form of harassment, during her month-long tenure at the Chestertown store. The single, isolated incident, even in light of the conduct that had transpired at Rock Hall during the previous month, did not create "intolerable working conditions" at Chestertown, such that a reasonable person would be *compelled* to resign her position. *See Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1072 (4th Cir. 1993) (explaining that "isolated incidents" were not sufficient to support a claim of constructive discharge). Moses went to Chestertown to volunteer for a very limited assignment, and had no direct interaction with Jacobs before her abrupt resignation. Thus, any belief she had that this could be a recurring situation was entirely speculative. *See, e.g., Jones v. United Health Group,* Civil No. JKB-17-3500, 2019 WL 1903668 (D. Md. April 29, 2019) ("Even if being assigned to work closely with a co-worker who was recently accused of harassment could create objectively intolerable conditions in some cases, here, Jones only adduced evidence that such conditions *might* arise later. Speculation about a situation that might arise in the future does not meet the high bar

for constructive discharge."); *cf. Jefferson v. Sewon Am., Inc.,* 891 F.3d 911, 921 (11th Cir. 2018) ("[T]he impact [of an adverse action] cannot be speculative.") (internal quotations omitted); *Aqulino v. Univ. of Kansas,* 268 F.3d 930, 936 (10th Cir. 2001) ("Speculative harm does not constitute adverse employment action."). The EEOC cannot establish that Jacobs was constructively discharged, and Dolgencorp is entitled to summary judgment on that limited issue. Additionally, Dolgencorp's invocation of the *Faragher/Ellerth* doctrine is not vitiated by any tangible employment action.

### C. The *Faragher/Ellerth* Defense

The Court next turns to whether Dolgencorp can establish the doctrine's applicability. As noted above, *Faragher* and *Ellerth* require an employer to prove two elements to avoid vicarious liability for an actionable hostile work environment by an employee's supervisor: (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *See, e.g., Ellerth,* 524 U.S. at 765.

The EEOC has established the existence of genuine issues of material fact as to both facets of this defense. The existence of Dolgencorp's anti-harassment policy suggests that Dolgencorp exercised reasonable care to prevent harassing behaviors. *See Barrett v. Applied Radiant Energy Corp.,* 240 F.3d 262, 266 (4th Cir. 2001) ("Distribution of an anti-harassment policy provides 'compelling proof' that the company exercised reasonable care in preventing and promptly correcting sexual harassment."). Here, however, the existence of the anti-harassment policy does not end the inquiry about "promptly correcting" harassment. This Court does not credit the EEOC's unsupported assertion that Dolgencorp unreasonably required some corroboration of allegations of harassment before imposing discipline on its employee. *See* ECF 37 at 24. However,

on this record, reasonable factfinders could disagree about the adequacy and promptness of Dolgencorp's investigation, given the inexperience of the investigators and the length of time the investigation consumed (when Jacobs was subject to a temporary transfer pending the results.). *See, e.g.,* ECF 37-6 at 145:20-146:8 (Rheiner testimony that "It took far too long to conclude this case . . . because this was my first time handing [sic] a case like this."). Finally, reasonable factfinders could disagree about whether Jacobs "unreasonably failed to take advantage of any preventive or corrective opportunities" simply because she did not report Moses to HR at the first sign of trouble. *See, e.g., Homesley v. Freightliner Corp.,* Civil Nos. 02-1158, 02-1242, 2003 WL 1908744, at *8 (4th Cir. Apr. 22, 2003) ("When . . . harassment went from sporadic [over a two-year period] to persistent, Homesley promptly complained about the unwelcomed conduct to her supervisor. . . Under these circumstances, a jury could properly conclude that Homesley did not unreasonably fail to take advantage of any preventative or corrective opportunities."). Given the compressed time period for all of the conduct in this case, a jury could conclude that Jacobs's brief delay before reporting to Human Resources, within the first month of her employment, was reasonable. Thus, the question of whether Dolgencorp can properly avail itself of the *Faragher/Ellerth* defense presents an issue for the jury.

**CONCLUSION**

For the reasons set forth above, Dolgencorp's Motion for Summary Judgment will be GRANTED solely as to the issue of constructive discharge, but DENIED as to the EEOC's remaining claim. A separate Order follows, which will include information about future proceedings, including trial.

Dated: March 18, 2020                    /s/
                                          Stephanie A. Gallagher
                                          United States District Judge